## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## (ALBANY DIVISION)

| | |
|---|---|
| STEVEN WATTS,<br><br>　　　　　Plaintiff,<br>　　v.<br><br>SELENE FINANCE LP; EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; AND TRANS UNION, LLC,<br><br>　　　　Defendants. | **Case No.: 1:22-cv-00186**<br><br>**COMPLAINT AND**<br>**DEMAND FOR JURY TRIAL**<br><br>1.  **FCRA, 15 U.S.C. § 1681** *et seq.*<br><br>2.  **FDCPA, 15 U.S.C. § 1692** *et seq.* |

Plaintiff, Steven Watts ("Plaintiff"), through his attorneys, alleges the following against Defendants Selene Finance LP ("Selene"); Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and Trans Union, LLC ("Trans Union").

## I.　　INTRODUCTION

1.　　Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendants Experian, Equifax, and Trans Union (collectively the "CRA Defendants").  Plaintiff contends that the CRA Defendants failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting

1

agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

2.       Plaintiff's Complaint also alleges that Defendants Experian, Equifax, and Trans Union also violated 15 U.S.C. § 1681 *et seq.* by failing to reasonably investigate Plaintiff's consumer disputes, which each resulted in Defendants' reporting of inaccurate information about Plaintiff.

3.       Plaintiff's Complaint also alleges violations of the FCRA against Defendant Selene for failing to conduct a reasonable reinvestigation after receiving notice of Plaintiff's disputes from CRA Defendants Experian, Equifax, and Trans Union.

4.       Plaintiff's Complaint is also based on the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et. seq., which prohibits debt collectors from engaging in abusive, deceptive and unfair practices in connection with the collection of consumer debts

## II.       JURISDICTION AND VENUE

5.       This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court). Plaintiff's claims also arise from the FDCPA, a federal law. *See* 15 U.S.C. § 1692.

6.       Venue in the Middle District of Georgia is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

### III.    PARTIES

7.      Plaintiff is a natural person who resides in Decatur, Decatur County, Georgia.

8.      Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

9.      Defendant Selene Finance LP is a financial institution engaged in the business of giving credit and collecting debt. Selene is also a furnisher, as defined in 15 U.S.C. § 1681s-2. Upon information and belief, Selene is regularly engaged in the business of furnishing credit information to the credit reporting agencies. Selene has its principal place of business in Dallas, Texas, and it will be served at its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 3009

10.     Defendant Selene began servicing Plaintiff's mortgage loan after the mortgage was already in default and included in Plaintiff's bankruptcy; therefore, Selene is as a *debt collector* as defined by 15 U.S.C § 1692(a)(6).

11.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

12.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of

"consumer reports," as defined in 15 U.S.C. § 1681a(d)), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

13.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 USC 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served at their Registered Agent Illinois Corporation Service Company at 801 Adlai Stevenson Drive, Springfield, IL 62703.

14.     The CRA Defendants Experian, Equifax, and Trans Union regularly engage in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. The CRA Defendants regularly furnish consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

15.     During all times pertinent to this Complaint, Selene and the CRA Defendants were authorized to conduct business in the State of Georgia and conducted business in the State of Georgia on a routine and systematic basis.

16.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

17.     Any violations by Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

## IV.   FACTUAL BACKGROUND

18.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

19.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

20.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

21.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

22.     Defendants Experian, Equifax, and Trans Union, the three major consumer reporting agencies (at times referred to individually as a "CRA," and "the CRAs"

collectively) in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports (also known as credit reports).

23.    The CRA Defendants' consumer reports generally contain the following information: (i) <u>Header/Identifying Information:</u> this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) <u>Tradeline Information</u>: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) <u>Public Record Information</u>: this section typically includes public record information, such as bankruptcy filings; and (iv) <u>Credit Inquiries</u>: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

24.    The CRA Defendants obtain consumer information from various sources. Some consumer information is sent directly to the CRAs by furnishers, and other information is independently gathered by CRAs from third party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

25.    The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the

intention of including this bankruptcy information on the consumer reports they sell to third parties such as lenders.

26. The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in their subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

27. The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

28. The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in their own files.

29. The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendants) to make lending decisions.

30. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's consumer reports.

31. The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

32.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

33.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.  "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

    b.  The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

34.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by Defendants in consumer reports.  DTI compares the total amount a consumer owes to the total amount a consumer earns.

35.     A consumer's income, however, is not included in their consumer report; only their amount of debt is. A consumer's income is entered into credit applications by the consumer.

36.     Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

37.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest, lower credit limits).

38.     A consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting as having a zero-dollar balance.

39.     The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is that all statutorily dischargeable debts included in the bankruptcy, other than those that have been successfully challenged in an adversary proceeding court, are discharged.

40.     Additionally, information indicating that a specific debt has not been discharged, but instead was successfully challenged through an adversary proceeding, is retrieved from the same sources from which the CRA Defendants independently obtain consumer bankruptcy case information.

41.    The CRA Defendants also receive information about discharge exceptions directly from furnishers of account/tradeline information, such as Selene.

42.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, the CRA Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

43.    The CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

44.    The CRA Defendants routinely report inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b), despite possessing information inconsistent with the reported information, and information that establishes that the reported information is inaccurate.

45.    The CRA Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

46.    The CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681(e)(b).

47.    The CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, information contained in their own files, and/or disputes from consumers.

48.    The CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures, including pertaining to inaccurate account and payment

statuses, and failing to verify the status of accounts even after notice from the consumer, through the thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints filed against it for its inaccurate reporting following a consumer bankruptcy.

49.     Selene also knows that it is required under the FCRA to accurately report information following a Chapter 13 discharge.

50.     Here, documents show Selene had actual knowledge of Plaintiff's payments to Selene through the bankruptcy and knowledge of Plaintiff's discharge.

*Allegations Specific to the Credit Reporting of Plaintiff*

51.     In or around September 2009, Plaintiff secured a mortgage loan with Wilmington Savings Fund Society, which was serviced by Rushmore Loan Management, account number 10276003xxxx (the "Account").

52.     Plaintiff filed a Chapter 13 Bankruptcy on or about August 2, 2019, in the United States Bankruptcy Court for the Northern District of Georgia (Case No. 19-61979-jwc).

53.     Plaintiff's bankruptcy Plan was confirmed on January 16, 2020. The Plan required Plaintiff to pay the Account through the Chapter 13 bankruptcy trustee.

54.     Throughout his Chapter 13, Plaintiff successfully made all payments in compliance with the Bankruptcy Plan agreed with the Bankruptcy Court.

55.     Through his Chapter 13 Plaintiff completely paid off the Account in full on March 1, 2022, so that there was no balance remaining.

56.     After successfully making all his payments and completing his Chapter 13 Plan, Plaintiff received an Order of Discharge on or about July 29, 2022.

57.     On July 31, 2022, the bankruptcy court sent by first class mail to Selene's Bankruptcy Department, a notice of Plaintiff's discharge. The address to which the notice was sent was 3501 Olympus Blvd., Suite 500, 5th Floor, Dallas, TX, 75019, Selene's principal place of business.

58.     Thereafter, Plaintiff's Account should have reported as "Paid" with zero balance owed.

59.     Plaintiff's Final Chapter 13 Report, dated August 3, 2022, lists the Account as "Wilmington Savings Fund Society" with a "Claim Allowed" of $84,998.90 and shows "Principal Paid" was $84,998.90.

60.     Upon information and belief, in or around June of 2020 (during Plaintiff's Chapter 13), Selene took over the servicing of the Account.

61.     The National Data Center ("NDC") is a web-based centralized source for Trustees and debtors to manage Chapter 13 case and claim data. All payments to the Chapter 13 Trustee and disbursements to creditors are maintained in the NDC.

62.     Plaintiff's NDC report shows every payment on the Account made by Plaintiff to the Trustee and then dispersed to creditors. Between October 2019 and May 2020, the NDC shows Plaintiff's Trustee disbursed payments to Wilmington Savings Fund Society. Between July 2020 and March 2022, the NDC shows payments were disbursed to Selene. The NDC shows the Account was fully paid off on March 1, 2022.

63.     Plaintiff owns a trucking business whereby he owns four box trucks and a dump truck. In around August 2022, Plaintiff needed some cash to perform some preventative maintenance on his five trucks and purchase some commercial insurance.

64.     On or about September 9, 2022, Plaintiff applied with Peoples Bank for a cash-out mortgage loan of his fully paid home so he could access funds he needed to keep his business going.

65.     In that September 9 consumer report, Equifax accurately reported a tradeline that the Account, as serviced by Rushmore Loan, was included in Plaintiff's Chapter 13, and was paid off and had a "$0 Balance."

66.     However, all three CRA Defendants reported a separate tradeline of the Account, as serviced by Selene, account number 712xxxx, and reported a Balance of $21,669 owed, a $5,275 Past Due, and a 30-day late in July 2022 (four months after Plaintiff had paid off the Account in full).

| Derogatory Accounts | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **SELENE FINAN** #712▮▮ (877) 735-3637 Owner: Individual | Opened **09/2009** | Reported 07/2022 | High Credit $91,575 | Reviewed 25 | 30 0 07/ 2022 | 60 0 | 90+ 0 | Past Due **$5,275** | Payment **$589** 360 mos | Balance **$21,669** |
| | Last Pmt 03/2022 | TRU (EFX.XPN) | CONVENTIONAL (MTG) **30 days late** | | | | | | | |
| | CONVENTIONAL REAL ESTATE MORTGAGE | | | | | | | | | |
| **RUSHMORE LOAN MANAGE** #102760003▮ (888) 504-6700 Owner: Individual | Opened **09/2009** | Reported 06/2020 | Limit - | Reviewed 65 | 30 1 | 60 1 | 90+ 4 | Past Due - | Payment **monthly** | Balance **$0** Closed 01/2019 |
| | Last Pmt 05/2020 | EFX | CONVENTIONAL **Bankruptcy** | | | | | | | |
| | BANKRUPTCY CHAPTER 13 BANKRUPTCY PETITION FIXED RATE TRANSFER/SOLD CONVENTIONAL REAL ESTATE LOAN | | | | | | | | | |

67.     People's Bank told Plaintiff he would not qualify for a mortgage loan because the Selene mortgage account was reporting to his consumer reports as 30 days late

within the previous 12 months of his application. Under mortgage guidelines, a consumer cannot qualify for a mortgage if there is a late payment on a mortgage in the previous 12 months.

68.     The CRA Defendants also reported Plaintiff's bankruptcy filing and bankruptcy discharge information (date/court/chapter) in the Public Records section of Plaintiff's consumer reports.

69.     The CRA Defendants are aware that they are generally required to report accounts included in a consumer's Chapter 13 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance, unless a furnisher provides information showing that a specific debt was excluded from the discharge.

70.     The CRA Defendants should have reported all of Plaintiff's dischargeable, pre-petition debt as included in or discharged in Chapter 13 Bankruptcy, and/or with a zero-dollar balance but did not.

71.     The pre-petition Account was included in Plaintiff's bankruptcy and discharged on or about July 2022.  Therefore, the Account should have been reported by Defendants as discharged in bankruptcy, and/or with a zero-dollar balance.

72.     However, Defendants inaccurately reported the discharged Account with a large balance owed, a past due owed, instead of a zero-dollar balance, and 30 days late months after the Account was paid off.

14

*Plaintiff's Disputes*

73.     In or around September 2022, Plaintiff faxed dispute letters to Equifax, Experian, and Trans Union.

74.     In Plaintiff's letters, he explained that he paid off the Account on March 1, 2022 and that his Chapter 13 was discharged on July 29, 2022. He also stated that Selene was reporting to his credit that he still owed $21,000. Plaintiff further explained he had contacted Selene several times by phone and email, but Selene said that he still owed money and he was late on his payments.

75.     Plaintiff attached to his disputes his driver's license, social security card, an NDC document showing all payments and that the Account was paid off, an email from Plaintiff to his bankruptcy attorney, emails to Selene, and bankruptcy documents.

76.     On or about September 13, 2022, Plaintiff received a response letter from Equifax showing that the Account was not corrected. Selene was reporting a Balance due of $21,669, a Past Due of $5,275, and 30 days past due in July 2022.

77.     On or about October 3, 2022, Plaintiff received a response letter from Experian showing that the Account was not corrected. Selene was reporting a Balance due of $21,791, a Past Due of $5,865, and 60 days Past Due in August 2022.

78.     On or about September 29, Plaintiff received a letter from Selene stating "Our records indicate the above referenced account has been impacted by a bankruptcy filing. If a mortgagor has received a discharge in bankruptcy, Selene fully acknowledges

that such mortgagor has no personal liability for the debt and is not attempting to collect the debt from that mortgagor personally."

79.     Then on or about September 30, 2022, Selene sent Plaintiff a letter stating Plaintiff "may qualify for Selene's [Loan] Modification Program, which will make mortgage payments more affordable and help you keep your home."

80.     On or about October 3, 2022, Plaintiff received the first mortgage statement he had ever received from Selene (all his payments had gone through his Trustee). The Selene statement said "$7,633.85 was due on 11/01/22" which included a "Past Due Amount of $2,358.36."

81.     On or about October 3, 2022, Plaintiff also received a "payoff letter" with wire transfer instructions listing the amount due to Selene to fully pay off the Account. Selene stated the total Balance Due was $21,960.22 (Unpaid Principal Balance: $16,858.44, Interest Due: $402.88, and Corporate Advance Balance: $4,685.90).

82.     On or about October 4, 2022, Plaintiff received a "<u>NOTICE OF DEFAULT AND INTENT TO ACCELERATE.</u>" The letter stated that Plaintiff must pay $7,044.26 to "CURE DEFAULT."

83.     Plaintiff was extremely upset and confused about the information being provided by Selene since he believed he had completely paid off the Account on March 1, 2022.

84.     On or about October 6, 2022, Plaintiff mailed certified dispute letters to Experian, Equifax, and Trans Union disputing their inaccurate reporting of the Account.

85.     The letters specifically advised that Plaintiff had paid off the Selene/Wilmington mortgage on March 1, 2022 through his bankruptcy and he didn't owe anything, but Selene was reporting he owed $21,669, was past due $5,275, and 30 days late in July 2022.

86.     Plaintiff attached to his dispute letters the Chapter 13 Final Report showing the loan had been paid off and his NDC document showing all payments to the Trustee/Wilmington/Selene and that the Account was paid in full.

87.     Based on the tracking receipts, Experian, Equifax, and Trans Union received Plaintiff's dispute letters.

88.     Upon information and belief, Experian, Equifax, and Trans Union forwarded Plaintiff's disputes to Selene within 5 business days of receipt.

89.     Upon information and belief Selene received Plaintiff's disputes.

90.     On or about October 18, 2022 Plaintiff received an email from loanresolution@selenefinance.com. The email stated that Selene had received an email from Plaintiff on September 29, 2022 regarding the Account.

91.     The letter continued: "Please be advised, our records reflect that a Chapter 13 Bankruptcy Petition was filed by Steven K. Watts on August 02, 2019, in the Northern District of Georgia (Atlanta), under case number 19-61979, at this time the bankruptcy is considered closed and discharged. The necessary updates have been completed on the account and Mortgage Statements have resumed generating to the account."

92.     The letter included the following: "**Selene Finance LP is a debt collector**

**attempting to collect a debt and any information obtained will be used for that purpose**. Please note that if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally."

93.     However, on the same day, Plaintiff received another letter from Selene dated October 18, 2022 stating he owed $21,980.22 to pay off his loan.

94.     On October 21, 2022, Plaintiff filed a complaint against Selene with the Consumer Financial Protection Bureau.

95.     On October 24, 2022, Plaintiff filed a BBB complaint against Selene.

96.     In response to a call with Selene, Plaintiff received a copy of the Account payment history on or about October 25, 2022, that can only be described as incomprehensible.

97.     On or about October 25, 2022, Plaintiff also received another letter which acknowledged Plaintiff's discharged Chapter 13 and went on to state that the servicing of the Account transferred from Rushmore Loan to Selene on June 5, 2022. That was not correct – Selene received payments from the Trustee from July 2020 until it was paid off on March 1, 2022.

98.     The letter also said Selene did not assess any late fees or submit any adverse credit reporting for the 60 days after the transfer date of June 5, 2022. That also was not correct – Selene reported the Account 30 days lates in July 2022.

99.     The letter further stated that the Account was four months delinquent (July 1, 2022 through October 1, 2022), the Unpaid Balance is $16,858.44, and Plaintiff has a

Corporate Advance Balance in the amount of $4, 705.90.

100.    None of this was correct as records show the Account was paid in full on March 1, 2022.

101.    Selene also stated that "Upon review of the credit reporting submissions, we determined that Selene accurately reported the status of the account."

102.    Plaintiff was more frustrated and confused than ever. Also, at this point all four of his business trucks had broken down and needed repair and towing. Plaintiff desperately needed to access the equity in his home – without operational trucks he could not earn any income. Plaintiff was becoming more desperate by the day about the inaccurate reporting of the Account.

103.    On or about October 29, 2022, Plaintiff received his dispute results from Equifax. Equifax verified the reporting as accurate. Equifax reported a Balance of $21,761, a Past Due of $5,865, and 60 days late.

104.    On or about November 2, 2022, Plaintiff received his dispute results from Trans Union. Trans Union also verified the reporting as accurate. Trans Union reported a Balance of $21,911, a Past Due of $6,404, and 90 days late.

105.    On or about November 4, 2022, Plaintiff received his dispute results from Experian. Experian also verified the reporting as accurate. Experian reported a Balance of $21,544, a Past Due of $6,454, and 90 days late.

106.    Experian, Equifax, and Trans Union did not investigate Plaintiff's dispute, and pursuant to their unreasonable procedures, merely forwarded an automated dispute

form to Selene, despite possessing independent information indicating the Account was paid off on March 1, 2022 and discharged, based on the proof documentation Plaintiff included in his dispute.

107.  Rather than perform an investigation based on Plaintiff's dispute, reasonably available public records, and information known by the CRA Defendants that Plaintiff obtained a discharge, the CRA Defendants merely parroted information furnished by Selene despite awareness that the information was factually inaccurate and conflicted with information known by the CRAs.

108.  Selene failed to conduct a reasonable investigation after receiving notice of Plaintiff's dispute from Experian, Equifax, and Trans Union. Selene failed, among other things, to review all relevant information regarding the dispute or ignored this information.

109.  Consequently, Selene continued to furnish inaccurate data to Defendants Experian, Equifax, and Trans Union despite knowledge of Plaintiff's dispute and otherwise possessing information from which Selene should have reported accurate information about the Account.

110.  On or about November 7, 2022, Selene responded to Plaintiff's BBB complaint that its review of the Chapter 13 Plan indicated that upon discharge, the Account is to be satisfied and lien released, but that Selene's Bankruptcy Department was conducting a discharge audit review.

111.    Plaintiff has been distressed and confused by Selene's continual statements that it is aware of his bankruptcy discharge and cannot be personally liable, yet Plaintiff owes Selene over $21,000 and is becoming more past due every month.

112.    Plaintiff's credit reports have still not been corrected and he is unable to earn a living.

113.    Selene continues to attempt collection of funds which Plaintiff does not owe.

114.    Upon information and belief, Selene does not have reasonable processes in place to prevent collection efforts (including collection letters and reporting derogatory tradelines to credit reports) upon debts which have been discharged in bankruptcy.

115.    Defendants inaccurately reported that Plaintiff owed a balance that Plaintiff did not actually owe, and also reported inaccurate account statuses and payment histories.

116.    Defendants inaccurately reported the Account with a balance owed after the Account was paid and discharged in Chapter 13 Bankruptcy and therefore had a zero-dollar balance and could not have possible been late after it was paid off (as explained in Plaintiff's dispute and proof documentation).

117.    Defendants' reporting of the Account is patently false and therefore inaccurate.

118.    If not patently false, Defendants' reporting of the Account is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

119.   Upon information and belief, had Defendants accurately reported the Account as paid off with a zero balance, Plaintiff's credit scores and/or DTI would have been better.

120.   Defendant's reporting of an additional $21,000 of debt which Plaintiff does not actually owe negatively increases DTI since the debt is substantially greater, but the income is unchanged.

121.   The reporting of an account as "Past Due" is especially harmful, particularly after a consumer has been discharged in bankruptcy. Credit scores treat consumers more harshly if there are past due amounts reported after a discharge.

122.   The false increased debt also negatively impacts the 30% of credit score which is based on the debt owed divided by credit limits, which impacts post-discharge consumers even more than those who have not filed bankruptcy.

123.   After Plaintiff's bankruptcy discharge, Plaintiff tried to apply for a cash-out mortgage loan to access some of his home equity to pay for desperately needed repairs to his business trucks.

124.   However, solely due to the inaccurate reporting of the Account by Defendants, Plaintiff was told he would not qualify for a mortgage.

125.   Had Defendants not inaccurately reported the Account as "late" starting in July 2022 (four months after the Account was paid off) Plaintiff likely would have qualified for the mortgage he needed in early September.

126.   Defendants' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to People's Bank/Factual Data and other lenders by Defendants during the process of Plaintiff's credit application.

127.   As a direct result of the Defendants' inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

128.   Plaintiff sustained actual monetary damages from the expense of certified mail tracking of Plaintiff's disputes to Defendants. Plaintiff also spent a significant amount of time drafting complaints to the BBB and CFPB and trying to get answers from Selene via phone, email, and letters.

129.   As a direct result of Defendant's inaccurate reporting, Plaintiff also suffers actual damages in the form of attorneys' fees  incurred, related to Defendants' inaccurate reporting.

130.   Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, humiliation, stress, anger, loss of sleep, reputational damage, frustration, shock, embarrassment, violation of Plaintiff's right to privacy, and anxiety.

131.   Plaintiff has experienced significant distress from not being able to repair his business trucks, especially knowing the cash he needs is available, but for Defendants' inaccurate reporting. The issue has also caused marital stress since Plaintiff is the sole earner in his household and cannot earn any money until his trucks are running.

## V.     COUNT I
**The CRA Defendants (Experian, Equifax, Trans Union)**
**Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681(i)**

132.    Plaintiff incorporates by reference all of the above factual allegations of this Complaint as though fully set forth herein at length.

133.    The FCRA requires CRAs, like Defendants, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

134.    The CRA Defendants negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's credit information pertaining to pre-bankruptcy debts after a Plaintiff received a Discharge Order.

135.    The CRA Defendants voluntarily obtained information about Plaintiff's bankruptcy filing and discharge to include in Plaintiff's consumer reports.

136.    When the CRA Defendants procured and published Plaintiff's bankruptcy information, they had an obligation to ensure they followed reasonable procedures to report the bankruptcy discharge and its effects with maximal accuracy.

137.    Despite knowledge of these legal obligations, the CRA Defendants willfully and consciously breached their known duties and deprived Plaintiff of Plaintiff's rights under the FCRA.

138.    The CRA Defendants knew or should have known of their obligations under the FCRA, especially pertaining to reporting discharged debt with a zero-dollar balance.

139.    These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and evidenced in prior cases involving CRAs from which the CRA Defendants are on notice of their unreasonable procedures concerning the reporting of discharged debts.

140.    Additionally, the CRA Defendants possess or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

141.    However, the CRA Defendants inaccurately reported an Account that predated Plaintiff's Chapter 13 Bankruptcy, was included, paid off, and discharged by Plaintiff's bankruptcy discharge.

142.    The CRA Defendants had actual knowledge of Plaintiff's bankruptcy and Discharge Order, as evidenced by the information they published in her consumer reports, including her bankruptcy case number, court, date of filing and date of discharge.

143.    The CRA Defendants received notice of Plaintiff's bankruptcy discharge through public records, their own files, and information provided by data furnishers.

144.    The CRA Defendants know that discharged debts should not be reported as late, past due, or with outstanding balances after the discharge date, and should be reported with a zero balance.

145.    The CRA Defendants had prior notice of their unreasonable procedures for reporting discharged debts.

146.    The CRA Defendants also possessed information from which they should know the information reported about Plaintiff was inaccurate, as Plaintiff's consumer reports include: the date the consumer filed bankruptcy, whether the consumer obtained a bankruptcy discharge, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

147.    Yet in this case, the CRA Defendants reported the Account, which predated Plaintiff's bankruptcy, with a balance and past due owed and lates after discharge.

148.    The CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

149.    The CRA Defendants also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when they knew or should have known the information they are reporting is inaccurate, and/or otherwise contradicted by information known by the CRAs, reported to the CRAs, and/or reasonably available to the CRAs.

150.    The CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

151.    Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681e(b) were negligent.

152.    Even after Plaintiff notified the CRA Defendants of the inaccurate information they included in Plaintiff's credit file, the CRA Defendants continued to inaccurately report the Account with an outstanding balance, despite notice that the

Account was discharged, and the ability to independently confirm that the Account was discharged.

153.    Plaintiff's disputes included proof documents showing the Account was paid off during the bankruptcy and therefore, could not possibly have been late after the discharge.

154.    The CRA Defendants therefore further failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by unreasonably relying on the furnisher, where, as here, the CRA Defendants possessed the information confirming that the Account was paid off and discharged.

155.    The CRA Defendants also failed to follow reasonable procedures, as 15 U.S.C. § 1681e(b) requires, by failing to verify that the Account was discharged following Plaintiff's dispute. The information necessary to do so can be retrieved from the same sources the CRA Defendants procure consumer bankruptcy information, but Plaintiff included his bankruptcy documents with his dispute.

156.    When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

157.    When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

158.    Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

159.    Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, the CRA Defendants violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified the CRA Defendants of the inaccurate information reported in Plaintiff's credit file.

160.    Defendants Experian, Equifax, and Trans Union's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

   a.   Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

   b.   Failing to consider all relevant information while investigating Plaintiff's dispute, including the proof documents which Plaintiff included.

   c.   Failing to include all relevant information when notifying Selene of Plaintiff's dispute.

161.   Instead of reasonably reinvestigating Plaintiff's dispute, Defendants Experian, Equifax, and Trans Union did not respond to Plaintiff's dispute and continued to report the discharged Account with an outstanding balance, past due, and lates after Plaintiff's bankruptcy discharge.

162.   The CRA Defendants' conduct, as described above, was done willfully and knowingly; or alternatively the CRA Defendants' conduct was negligent.

163.   The CRA Defendants' inaccurate reporting damaged Plaintiff's creditworthiness.

164.   Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by the CRA Defendants inaccurately reporting a balance, past due, and lates for a debt that was discharged in bankruptcy, and otherwise failing to report that the debt was discharged in bankruptcy.

165.   Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, loss of sleep, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

166.   The CRA Defendants are the direct and proximate causes of Plaintiff's damages.

167.   The CRA Defendants are substantial factors in Plaintiff's damages.

168.   Therefore, the CRA Defendants are individually liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.    COUNT II
### Defendant Selene
### (Violations of the FCRA, 15 U.S.C. § 1681s-2(b))

169.    Plaintiff incorporates by reference all the above factual allegations of this Complaint as though fully stated herein.

170.    The FCRA requires that furnishers of information like Selene to conduct an investigation with respect to disputed information, review all relevant information, and report the results of the investigation to the consumer reporting agency. If the investigation reveals the information is incomplete or inaccurate, report those results to all consumer reporting agencies to which the furnisher has provided the inaccurate information.

171.    Selene knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, in the promulgations of the Federal Trade Commission, and in well-established case law. Selene possesses or can easily obtain substantial written materials that detail its duties as a furnisher under the FCRA.

172.    Despite knowing these legal obligations, Selene acted consciously in breaching its known duties and deprived Plaintiff of his rights under the FCRA.

173.    Plaintiff disputed the Selene tradeline through all three national CRAs: Defendants Experian, Equifax, and TransUnion.

174.    Thereafter, the consumer reporting agencies forwarded Plaintiff's dispute to Selene, notifying Selene that Plaintiff was disputing the information it had furnished about the Account.

175.    Selene received notice of Plaintiff's dispute and failed to reasonably investigate or otherwise take corrective measures despite possessing all relevant knowledge regarding the dispute.

176.    Selene continues to furnish inaccurate information about Plaintiff to all three CRAs, even though Selene possessed all relevant information about the Account and the inaccuracy that Plaintiff disputed (both from Plaintiff's dispute and Selene's own records).

177.    The inaccurate Selene account materially and adversely affects Plaintiff's credit standing.

178.    On at least one occasion within the past two years, by example only and without limitations, Defendant Selene violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's dispute to Experian, Equifax, and Trans Union.

179.    Selene violated sections 15 U.S.C. §§ 1681n and 1681o of the FCRA by engaging in willful and negligent noncompliance of 15 U.S.C. § 1681s-2(a), (b), and engaging in conduct that violates 15 U.S.C. § 1681s-2(a), (b), including:

   a.   Willfully and negligently failing to conduct an investigation of Plaintiff's dispute, despite possessing knowledge, information, and records to substantiate Plaintiff's dispute;

   b.   Willfully and negligently failing to review all relevant information concerning Plaintiff's dispute;

   c.   Willfully and negligently failing to report the results of investigations to the relevant consumer reporting agencies;

d.  Willfully and negligently failing to report to the CRAs that the disputed information is indeed inaccurate;

e.  Willfully and negligently failing to properly participate, investigate and comply with the reinvestigations that were conducted by any and all consumer reporting agencies concerning the inaccurate information disputed by Plaintiff;

f.  Willfully and negligently continuing to furnish and disseminate inaccurate credit, account and other information concerning the Plaintiff to the consumer reporting agencies despite actual knowledge of the falsity of the reported information; and

g.  Willfully and negligently failing to comply with the requirements for furnishers of information enumerated in 15 U.S.C. § 1681s-2(b).

180.    Selene unreasonably refused to take corrective measures required by the FCRA to correct and/or update Plaintiff's consumer information furnished to the national consumer reporting agencies.

181.    Selene is a direct and proximate cause, as well as a substantial factor in causing damage and harm to Plaintiff.

182.    Consequently, Selene is liable to Plaintiff for the full amount of statutory, actual, and punitive damages, as described herein and as allowable by law. Additionally, Plaintiff is entitled to Plaintiff's attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681n and § 1681o.

## COUNT III
### Defendant Selene
### (Violations of the FDCPA, 15 U.S.C. § 1692 *et seq.*)

183.    Plaintiff incorporates by reference all the above factual allegations of this Complaint as though fully stated herein.

184.    Defendant Selene is a "debt collector" as defined by 15 U.S.C § 1692(a)(6) because Defendant only began servicing Plaintiff's Account after it had gone into default. See 15 U.S.C. § 1692a(6)(F)(iii); *Stewart v. JP Morgan Chase Bank, N.A.*, No. 18 C 7584, 2020 U.S. Dist. LEXIS 13654, at *8 (N.D. Ill. Jan. 28, 2020).

185.    Selene violated the FDCPA. Defendant's violations include, but are not limited to, the following:

186.    Selene violated the FDCPA by collecting or attempting to collect a consumer debt without complying with the provisions of Sections 1692b to 1692j, inclusive, of Title 15 of the United States Code (Fair Debt Collection Practices Act).

187.    Selene violated 15 U.S.C. § 1692e(2) by using false, deceptive, or misleading representations or means in connection with the collection of any debt, including the character, amount, or legal status of any debt.

188.    Selene violated 15 U.S.C. § 1692e(8) communicating or threatening to communicate to any person credit information which is known or which should be known to be false; Defendant Selene knowingly reported false credit information to the CRA Defendants.

189.    Selene violated 15 U.S.C. § 1692f, by using unfair or unconscionable means to collect or attempt to collect any debt. Specifically, the collection of any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law; here Defendant communicated via debt collection letter and Plaintiff's credit reports that Plaintiff was personally liable for over $21,000 of debt he did not actually owe and in fact had paid off in full.

190.    Selene's acts, as described above, were done knowingly and willfully.

191.    As a result of the foregoing violations of the FDCPA, Defendant is liable to Plaintiff for declaratory judgment that Defendant's conduct violated the FDCPA, actual damages, statutory damages, and attorney's fees and costs.

## VII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgments against Defendants for the following:

(a)    Declaratory judgment that Defendants violated the FCRA, 15 U.S.C. § 1681e(b);

(b)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(c)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(d)    An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(e)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(f)     Declaratory judgment that Defendant Selene violated the FDCPA;

(g)     Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

(h)     Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

(i)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3)

(j)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## VIII.  JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 15th day of November 2022.

By: */s/Jenna Dakroub*
Jenna Dakroub, GA Bar No. 385021
**Price Law Group**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (818) 600-5513
F: (818) 600-5413
E: jenna@pricelawgroup.com
*Attorney for Plaintiff*
*Steven Watts*